UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREVIN MARIO MORALES,<br><br>Defendant. | CASE NO. 1:17-cr-00137-AWI-SKO<br><br>**ORDER ON DEFEDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE**<br><br>(Doc. Nos. 113, 118) |

**I. Background**

On January 28, 2019, Defendant Grevin Mario Morales, Sr. pled guilty to one count of 21 U.S.C. §§ 846 and 841(a)(1) conspiracy to distribute and to possess with intent to distribute methamphetamine. He was sentenced to 100 months imprisonment and 60 months of supervised release. Defendant is currently housed at Texarkana FCI, and his projected release date is January 17, 2024. He is 51 years old.

On August 11, 2020, Defendant filed a motion for compassionate release, Doc. No. 102, which the Court denied on November 24, 2020. Doc No. 112. On May 25, 2022, Defendant submitted a request for compassionate release to the Unit Team at Florence FCI, and it does not appear that Defendant received a response to this request. On September 12, 2022, Defendant filed his currently pending second motion for compassionate release, claiming that his health conditions amid the COVID-19 pandemic, combined with his rehabilitative efforts, make compassionate release appropriate. Doc. No. 113. On November 17, 2022, Defendant filed a supplemental brief in support of his second motion, Doc. No. 118, and on January 6, 2023, the United States of America ("Government") filed an opposition. Doc. No. 124. On January 10, 2023, Defendant filed a reply to the Government's opposition. Doc. No. 126.

## II. Legal Standard

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021) (citing Dillon v. United States, 560 U.S. 817, 819 (2010) and 18 U.S.C. § 3582(c)).  However, Congress provided an exception under 18 U.S.C. § 3582(c)(1)(A) to reduce a sentence for "extraordinary and compelling reasons." Id.  When a defendant "moves for compassionate release under § 3582(c)(1)(A), district courts may reduce his term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) 'extraordinary and compelling reasons' warrant a sentence reduction; (3) a sentence reduction is 'consistent with applicable policy statements' issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)." United States v. Chen, 48 F.4th 1092, 1094-95 (9th Cir. 2022); see also United States v. Wright, 46 F.4th 938, 945 (9th Cir. 2022).  "While the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, they cannot be treated as binding constraints on the court's analysis." Wright, 46 F.4th at 946 (internal quotations omitted) (citing Aruda, 993 F.3d at 802). "In the absence of an applicable policy statement from the Sentencing Commission, the determination of what constitutes extraordinary and compelling reasons for sentence reduction lies squarely within the district court's discretion." Chen, 48 F.4th at 1095 (citing Aruda, 993 F.3d at 801-802).  The inmate bears the "burden to establish his eligibility for compassionate release." Wright, 46 F.4th at 951; see also United States v. Mathews, 557 F. Supp. 3d 1057, 1061 (E.D. Cal. 2021) ("[T]he burden remains with the defendant.").

## III. Discussion

*Defendant's Arguments*

Defendant argues that "extraordinary circumstances" support a grant of compassionate release.  Specifically, Defendant asserts that his rehabilitative efforts combined with his medical ailments and the failure of the Bureau of Prisons ("BOP") to treat them amid the COVID-19 pandemic constitute "extraordinary circumstances" warranting compassionate release. Furthermore, Defendant argues that the factors set forth in 18 U.S.C. § 3553(a) weigh in his favor

because he has now served approximately 80% of his sentence, he has a solid release plan, release would be best for his health, and courts have recognized that conditions of confinement during the COVID-19 pandemic are significantly harsher than during normal times.

*Government's Arguments*

The Government argues that Defendant's medical conditions provide no extraordinary and compelling basis for sentence reduction because his prison medical records indicate that his medical conditions are being adequately treated and managed. Additionally, the Government contends that while Defendant's rehabilitative efforts are commendable, his behaving well in prison does not necessarily mean that he will behave well in society given his lengthy criminal history. Furthermore, the Government argues that the 18 U.S.C. § 3553(a) factors do not support a shorter sentence because Defendant twice distributed a significant quantity of methamphetamine, his many past convictions are drug related, he has chronic battles with drug abuse, and a shorter sentence would not reflect the seriousness of his offense.

*Discussion*

The parties agree that Defendant satisfied the administrative remedy exhaustion requirement before filing his second motion for compassionate release.[1] Doc. No. 124 at 3; Doc. No. 113 at 21-22. Therefore, to determine whether compassionate release is warranted, the Court will consider (1) whether "extraordinary and compelling reasons" warrant a sentence reduction; (2) whether a sentence reduction is "consistent with applicable policy statements" issued by the Sentencing Commission; and (3) the factors set forth in 18 U.S.C. § 3553(a). Chen, 48 F.4th at 1094-95; Wright, 46 F.4th at 945.

Congress directed the Sentencing Commission to promulgate general policy statements to "describe what should be considered extraordinary and compelling reasons for sentence

---

[1] Under 18 U.S.C. § 3582(c)(1), an inmate may file a motion for compassionate release after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Here, the record indicates that Defendant submitted a request for compassionate release to the Unit Team at Florence FCI on May 25, 2022, and it does not appear that Defendant received a response to this request at any time before he filed his second motion for compassionate release on September 12, 2022. In light of the record and agreement between the parties, the Court finds that Defendant satisfied the administrative remedy exhaustion requirement before he filed his second motion for compassionate release.

1  reduction." Chen, 48 F.4th at 1095 (citing 28 U.S.C. § 994(t)).  For motions filed by the BOP
2  Director, the Sentencing Commission's current policy statement limits "extraordinary and
3  compelling reasons" to: (1) medical conditions of the defendant; (2) age of the defendant; (3)
4  family circumstances; or (4) any other extraordinary and compelling reason as determined by the
5  BOP Director.  Id. (citing U.S.S.G. § 1B1.13, cmt. n.1(A)-(D)).  However, for motions directly
6  filed by a defendant, "there is no applicable policy statement binding the district court's
7  consideration of extraordinary and compelling reasons." Id.  "In the absence of an applicable
8  policy statement from the Sentencing Commission, the determination of what constitutes
9  extraordinary and compelling reasons for sentence reduction lies squarely within the district
10 court's discretion." Id. (citing Aruda, 993 F.3d at 801-802).  District courts are empowered to
11 consider any "extraordinary and compelling reason for release that a defendant might raise." Id.
12 (citing Aruda, 993 F.3d at 801).

13       Here, Defendant claims that his medical ailments and the BOP's failure to treat them amid
14 the COVID-19 pandemic, combined with his rehabilitative efforts, constitute "extraordinary
15 circumstances" warranting compassionate release.  With respect to medical ailments, Defendant
16 specifically states that he suffers from type II diabetes, loss of use of his right arm, Dupuytren's
17 contracture, nerve damage, a history of smoking, and skin rash.  While the Court acknowledges
18 that these conditions may pose a greater risk to Defendant's health amid the COVID-19 pandemic,
19 the record indicates that Defendant is currently being treated for ringworm, Type II diabetes,
20 Vitamin D deficiency, hyperlipidemia, COPD, joint pain, and hand pain.  See Doc. No. 124-1, Ex.
21 2 at 142-143.  Defendant has also taken metformin, insulin, cholesterol pills, and over-the-counter
22 aspirin for nerve pain.  Additionally, Defendant's medical records indicate that his blood sugar
23 level as measured by his most recent A1C is 7.0%, Id. at 184, which by Defendant's own
24 admission is within the target level for most people with diabetes.  Doc. No. 118 at 6:13-14.  The
25 record also indicates that Defendant is fully vaccinated against COVID-19 and that there currently
26 are zero inmates and three staff members with reported COVID-19 cases at Texarkana FCI.  See
27 BOP, COVID-19 Coronavirus Page, https://www.bop.gov/coronavirus/index.jsp (last visited
28 January 13, 2023); see also United States v. Martin, 2022 U.S. Dist. LEXIS 133985, *8 (E.D. La.

4

July 28, 2022) (finding no evidence that Texarkana FCI is failing to take the necessary steps to mitigate the spread of the virus); United States v. Marano, 2020 U.S. Dist. LEXIS 106680, *7-8 (N.D. Tex. June 1, 2020) (same); United States v. Wright, 2020 U.S. Dist. LEXIS 73500, *15 (W.D. La. Apr. 24, 2020) (same).  In light of the above, the Court is not persuaded that Defendant's health conditions and the BOP's management of those conditions warrant compassionate release.  See United States v. Ayon-Nunez, 2020 U.S. Dist. LEXIS 24722, *7 (E.D. Cal. Feb. 11, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (citing United States v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *14 (D. Ariz. Nov. 8, 2019)).

With respect to Defendant's rehabilitation, Defendant specifically states he has taken several self-improvement courses, completed a Painter Apprenticeship Program, earned certificates for completing drug abuse education and anger management programs, paid for all his case-related obligations, received a letter of accomplishment from his supervisor, and had no violations or disciplinary infractions during his entire prison term.  The Government characterized this rehabilitation as commendable but not sufficient for compassionate release because pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an "extraordinary and compelling reason."  See Chen, 48 F.4th at 1096 ("[I]n 28 U.S.C. § 994(t), Congress explained that 'rehabilitation . . . alone' cannot be extraordinary and compelling.").  While the Court recognizes that Defendant's second motion for compassionate release is based not just on his rehabilitative efforts but also on his medical conditions and treatments received at Texarkana FCI, the Court agrees with the Government's characterization and finds that there are no extraordinary circumstances warranting compassionate release at this time in light of the Court's earlier findings on the BOP's management of Defendant's medical conditions.[2]

The factors set forth in 18 U.S.C. § 3553(a) do not call for a changed outcome.  "These factors include, among other things: (1) the defendant's personal history and characteristics; (2)

---

[2] Defendant notes that the BOP recently advanced his projected release date from January 16, 2025 to January 17, 2024 "likely due to the fact that Mr. Morales has been successfully progressing in the BOP's Residential Drug Abuse Program."  Doc. No. 126 at 2.  Although the reason for the one-year advancement is not entirely certain, if what Defendant claims is true then an additional reduced sentence by the Court would amount to a windfall.

his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants." Wright, 42 F.4th at 1070 n.3 (citing 18 U.S.C. § 3553(a)). Here, the record indicates that Defendant has a long history of felonies and misdemeanors for narcotics trafficking. He twice distributed a significant quantity of methamphetamine, which he admitted to doing to support his own addiction. Defendant's ability to access large quantities of controlled substances raises significant concerns to the Court. Furthermore, given that one of Defendant's prior convictions (felony transport of a controlled substance) resulted in a 6-year prison sentence, Defendant's current prison sentence of 100 months (or 8 years and 4 months) for conspiracy to distribute and to possess with intent to distribute methamphetamine appears appropriate to "provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public."[3] Wright, 42 F.4th at 1070 n.3. Accordingly, the Court will deny Defendant's second motion for compassionate release.

## IV. Order

Accordingly, IT IS HEREBY ORDERED that Defendant's second motion for compassionate release is DENIED.

IT IS SO ORDERED.

Dated:   January 17, 2023

SENIOR DISTRICT JUDGE

---

[3] Defendant notes that he is "now serving essentially a 61-month sentence" after the BOP advanced his projected release date, as stated above, to January 17, 2024. Doc. No. 126 at 3.